UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TRACY MESHEY,

Plaintiff,

v.

THE DISTRICT BOARD OF TRUSTEES OF PASCO-HERNANDO STATE COLLEGE, FLORIDA,

Defendant.

Case No. 8:26-cv-02614

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff TRACY MESHEY ("Plaintiff" or "Meshey"), by and through undersigned counsel, sues Defendant THE DISTRICT BOARD OF TRUSTEES OF PASCO-HERNANDO STATE COLLEGE, FLORIDA ("PHSC" or "Defendant"), and alleges as follows:

**NATURE OF THE ACTION**

1. This is an employment discrimination and retaliation action arising from Defendant's treatment of Plaintiff after she disclosed a leukemia diagnosis, requested disability-related accommodations, used and requested protected medical leave, complained about disability discrimination and accommodation failures, and was ultimately terminated.

2. Plaintiff seeks relief under Title I of the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. §§ 12101 et seq.; the Rehabilitation Act, 29 U.S.C. §§ 794 et seq. (the "Rehab Act"); the Florida Civil Rights Act of 1992

("FCRA"), Fla. Stat. §§ 760.01 et seq.; and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 et seq.

3. The core factual sequence is straightforward: Plaintiff had a successful employment history; disclosed leukemia and resulting medical limitations; repeatedly supplied medical information and sought accommodations; took intermittent medical leave and worked remotely for substantial periods; was required to work during periods FMLA leave despite having that time counted against her leave bank; complained that PHSC was not engaging in a meaningful interactive process and not granting reasonable accommodations; was thereafter placed on a performance-improvement track; was threatened with termination or pressured to resign; took protected medical leave; again requested accommodation upon return; and was terminated approximately one week later.

4. Defendant has offered materially different explanations for Plaintiff's separation, including nonrenewal, alleged inability to perform essential functions, alleged performance deficiencies, and alleged undue hardship related to her accommodation requests. Plaintiff alleges those explanations are inconsistent and merely pretext for the real reasons: discrimination and retaliation.

## JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343 because this action arises under the ADA and FMLA.

6. This Court has supplemental jurisdiction over Plaintiff's related FCRA claims pursuant to 28 U.S.C. § 1367 because those claims arise from the same nucleus of operative facts as Plaintiff's federal claims.

7. Venue is proper in the Middle District of Florida, Tampa Division, because Defendant operates in Pasco County, Florida; Plaintiff worked for Defendant in Pasco County; and a substantial part of the events and omissions giving rise to these claims occurred in Pasco County, Florida.

8. Plaintiff timely exhausted the administrative remedies applicable to her ADA and FCRA claims. Plaintiff filed a Charge of Discrimination with the Florida Commission on Human Relations and the Equal Employment Opportunity Commission concerning disability discrimination and retaliation by PHSC.

9. The charge identified PHSC as the respondent, alleged disability discrimination and retaliation, and described conduct occurring from approximately June 2024 through Plaintiff's September 2025 termination.

10. On July 14, 2026, the United States Department of Justice issued Plaintiff a Notice of Right to Sue concerning EEOC Charge No. 511-2026-01055 and advised that she had ninety days from receipt to institute a civil action under Title I of the ADA.

11. All conditions precedent to this action have occurred, been performed, or have been waived, including the conditions precedent applicable to Plaintiff's FCRA claims.

## THE PARTIES

12. Plaintiff Tracy Meshey is an adult resident of Pasco County, Florida.

13. Defendant Pasco-Hernando State College is a public college operating campuses and facilities in Pasco and Hernando Counties, Florida, including facilities in New Port Richey and Wesley Chapel.

14. At all relevant times, Defendant was an employer within the meaning of the ADA, FCRA, Rehab Act, and FMLA, subject to any statutory or governmental defenses that may be raised and resolved by the Court. At all times pertinent hereto, Defendant was receiving federal funds at the time of its discrimination against Plaintiff. At all times pertinent hereto, Defendant received and utilized in conducting its functions federal financial assistance as provided by law, such assistance received for the purposes of assisting some or all of the programs and activities of Defendant. On information and belief, the funds received constituting such federal financial assistance were deposited into a general fund or account managed by or on behalf of Defendant.

15. At all relevant times, Dr. Lisa Richardson served as Defendant's Vice President of Advancement, Innovation, and Strategic Partnerships and was Plaintiff's supervisor.

16. At all relevant times, Teresa Montanez served in Human Resources, including as Associate Vice President of Human Resources and Chief Human Resources Officer, and participated in Defendant's handling of Plaintiff's complaints and accommodation requests.

17. At all relevant times, Linda Santella served as a Senior Benefits Specialist and participated in Defendant's processing of Plaintiff's FMLA and disability-related documentation.

18. At all relevant times, Wanda Lawson served as Director of Human Resources and Employee Relations and was the individual who attended the Teams call to terminate Plaintiff as described further below.

## FACTUAL ALLEGATIONS

19. Plaintiff began working for PHSC in June 2019 as a part-time Senior Office Assistant in the Academic Success Center after previously attending PHSC as a student.

20. Plaintiff later moved into a full-time grants role and, by July 2023, held the position of Associate Director of Grant Acquisitions and Management ("GAM").

21. Plaintiff reported to Dr. Richardson in the GAM role.

22. PHSC's written job description identified the GAM position as a forty-hour, "Flexible/Hybrid Work" position. Nothing in the job description identifies in-person attendance at the campus as an essential job duty or responsibility.

23. The GAM position involved, among other duties, researching funding opportunities, writing and submitting grant proposals, maintaining grant-related databases and deadlines, coordinating with internal and external stakeholders, managing stewardship and reporting, and developing strategic grant-writing plans.

24. The GAM position was primarily sedentary and heavily involved computer-based research, drafting, databases, electronic communications, telephone calls, videoconferences, and coordination with internal and external constituents.

25. Before the events described below, Plaintiff had a record of positive performance and alleges she had not been disciplined any performance issues later used to justify her termination.

26. In June 2024, Plaintiff was diagnosed with leukemia.

27. Plaintiff's leukemia and related treatment affected major life activities, including her immune system, and resulted in immunosuppression and heightened infection-related risks. The disability condition created other limitations on major life activities including standing for prolonged periods of time, driving, walking, performing physical tasks for extended period of time, bathing, eating, digestive processes, and related limitations on her ability to move and perform work outside of the home for prolonged periods of time.

28. Around the end of June 2024, Plaintiff disclosed her diagnosis to PHSC, via her supervisor, in a Teams meeting. In the same meeting, after the disclosure, PHSC, through Plaintiff's supervisor, directed Plaintiff to move from the Porter Campus in Wesley Chapel to the West Campus in New Port Richey.

29. Plaintiff alleges the New Port Richey assignment imposed a materially longer commute and placed her farther from her medical care team during active cancer treatment. Plaintiff complained about the decision and disclosed the adversity of this change to her assigned location to her supervisor during this meeting.

30. PHSC contends that the reassignment had been planned earlier in 2024 because of office-space needs associated with the Nursing and Allied Health Advancement Institute. Plaintiff disputes that PHSC's explanation fully accounts for the timing and manner of her reassignment, in particularly because multiple other offices were available.

31. Plaintiff, through her treating healthcare provider, provided information requesting disability and medical accommodation in the form of intermittent leave. In July 2024, PHSC approved Plaintiff for intermittent FMLA leave.

32. Plaintiff continued providing medical information to PHSC and sought accommodation related to her treatment, commute, exposure risk, and ability to perform her work remotely.

33. On or around October 25, 2024, Plaintiff submitted a formal written ADA accommodation request seeking to work remotely over the winter break period for proximity to treatment, care, and physicians.

34. In November 2024, Plaintiff followed up on her prior request orally in person to HR and supervisor. Plaintiff was only told that they would review the information.

35. PHSC had medical documentation concerning Plaintiff's condition in its files. In internal correspondence concerning the November 2024 request, a PHSC benefits representative stated that the College should have sufficient medical documentation to make a determination.

36. Plaintiff did not receive any correspondence or interactive process about her accommodation request. Instead, when Plaintiff was in person working at the campus, her supervisor asked "what are you doing here?" The supervisor further stated that Plaintiff was not supposed to be present than that, by physically being on the job, Plaintiff was a "liability" for the college, that she should not be driving, and that Plaintiff could create a lawsuit. Plaintiff thereafter worked remotely for a substantial period beginning in approximately November 2024.

37. Plaintiff alleges that during the early portion of this remote-work period she continued to perform her job and did not receive the type of documented performance discipline that PHSC later relied upon to justify terminating her.

38. Beginning in or around January 2025, when Plaintiff began receiving infusions as part of her cancer treatment, Plaintiff had already had those types of treatments and appointments approved for intermittent leave under the FMLA. However, Plaintiff's supervisor required Plaintiff to attend Teams meetings and perform work during her infusion appointments. When Plaintiff attempted to claim those meetings as compensable times, Plaintiff was threatened by her supervisor that Plaintiff would be committing "fraud" against the Defendant if she did not count the time against her FMLA leave bank, despite the fact that Plaintiff was required to attend work meetings remotely during the infusions.

39. On or about February 28, 2025, Dr. Richardson met with Plaintiff by Teams and informed her that PHSC expected her to return to the office after spring break. During this meeting, Plaintiff disclosed that she had complications arising from

the disability condition and treatment, including contracting C. diff along with related limitations on major life activities that created health risk for herself and others if she were required to be in close contact with others on the campus. Plaintiff accordingly expressed that she needed the remote work accommodation continued, which was summarily denied.

40. PHSC later asserted that it had identified performance concerns during Plaintiff's remote-work period, including the status of the GAM database, grant submissions, and grant-related expectations. However, none of these after-asserted performance concerns were communicated during the February 28, 2025 meeting where Plaintiff was told she needed to return to in-office work.

41. Around March or April of 2025, PHSC also identified a new or newly emphasized grant-submission key performance indicator (KPI) of approximately five applications per month, or sixty per year, which PHSC attributed to its Vision 2030 strategic plan and President Jesse Pisors.

42. Plaintiff disputes that the later-cited performance concerns accurately reflected her work and alleges that the quota and performance issues were first elevated and used against her after she sought disability-related accommodations.

43. At the February 28 meeting, PHSC proposed accommodations that included an isolated office, participation in many meetings by Zoom, and one remote-work day per week.

44. Plaintiff alleges those proposals were presented without first identifying, through a meaningful interactive process, the precise disability-related limitations

caused by her leukemia, treatment, and immunosuppression or whether the proposed measures would effectively address those limitations.

45. On March 5, 2025, Plaintiff again submitted ADA and FMLA documentation, including medical certification concerning her qualifying impairment.

46. Plaintiff continued working remotely—despite her supervisor's insistence that Plaintiff return to in-person work in the office—due to her health and spent portions of late March and early April on sick, personal, or FMLA leave for treatment.

47. On April 7, 2025, Plaintiff provided PHSC with an update concerning her ongoing treatment and need for medical absences.

48. On April 16, 2025, Plaintiff's intermittent FMLA entitlement was extended through approximately July 14, 2025, while her ADA request remained under review.

49. On April 18, 2025, Plaintiff submitted a formal written complaint to PHSC concerning, among other things, the handling of her accommodation requests, the requirement that she work in person, and alleged retaliatory conduct by Dr. Richardson.

50. PHSC's grievance policy contemplated a prompt meeting and written disposition when an employee submitted a grievance, including when the grievance concerned the employee's immediate supervisor.

51. Plaintiff alleges PHSC did not meet with her to meaningfully investigate or resolve the April 18 complaint and did not provide her with a disposition at the time contemplated by its own procedures.

52. A written "Complaint Review" was not provided to Plaintiff until July 30, 2025, after Plaintiff's counsel requested it. Plaintiff alleges the review was undated and unsigned and did not reflect interviews of Plaintiff or the witnesses she expected PHSC to contact.

53. Following her complaint, Plaintiff again requested disability accommodation in late April 2025 and provided supporting medical documentation. Meanwhile, Plaintiff was in-fact working remotely and performing all essential functions of the job.

54. PHSC approved full-time remote work for one month, during which PHSC stated that Plaintiff's performance would be monitored to assess the sustainability of the accommodation.

55. Soon thereafter, Plaintiff was placed on a Performance Improvement Plan or comparable formal performance-improvement process for the first time in her employment with PHSC.

56. The performance-improvement process relied in substantial part on the grant-submission quota and related performance metrics that Plaintiff contends had not previously been used to discipline her and were applied against her in close proximity to her accommodation requests and discrimination complaint. To Plaintiff's knowledge, the grant-submission quota and related performance metrics asserted by Defendant were not applied to anyone else in Plaintiff's department other than Plaintiff.

57. On or about July 7, 2025, Dr. Richardson met with Plaintiff concerning the performance-improvement process.

58. Plaintiff alleges that, during or in connection with that meeting, Dr. Richardson presented Plaintiff with two options: termination on or about July 14, 2025, or resignation effective at the end of July. Plaintiff was also told in this meeting that an accommodation of remote work would be "unfair" to other employees and team members for the accommodation to be granted.

59. Plaintiff further alleges Dr. Richardson told her that resignation would permit her to "control the narrative" and retain health insurance through the end of July.

60. At that time, Plaintiff was undergoing active treatment for leukemia and relied upon health coverage and ongoing medical care.

61. On July 11, 2025, Plaintiff's then-counsel contacted PHSC, asserted potential employment-law claims, and requested that Plaintiff be permitted to take protected medical leave rather than be terminated.

62. PHSC then approved additional FMLA leave through approximately September 15, 2025.

63. While Plaintiff was on leave, PHSC did not complete a meaningful interactive process with her concerning the accommodations that would be necessary and effective when she returned to work.

64. PHSC nevertheless later took the position that continued fully remote work had already proven unsustainable and that PHSC could not indefinitely continue that arrangement.

65. On September 15, 2025, as Plaintiff prepared to return from leave, she formally requested continuation of remote work as an ADA accommodation.

66. Plaintiff explained that she remained in active treatment, was immunosuppressed, received care through Moffitt Cancer Center and other providers, had regular infusions and home-health nursing, and believed in-person work was medically unsafe.

67. Plaintiff advised PHSC that she could perform the essential functions of her job remotely using Teams, Zoom, email, telephone, and other technology.

68. Plaintiff expressly stated that she was willing to engage in the interactive process and provide updated medical documentation.

69. Plaintiff promptly caused medical certification from Moffitt Cancer Center to be transmitted to PHSC and advised that additional documentation would follow.

70. Approximately five hours after Plaintiff's request, Ms. Montanez responded that PHSC had "previously determined that it could no longer indefinitely accommodate a remote working arrangement," while also stating that she looked forward to engaging in the interactive process.

71. Plaintiff alleges the wording and timing of that response demonstrate that PHSC had materially predetermined the outcome of her accommodation request

before reviewing her current medical information, identifying her then-current limitations, or discussing potentially effective alternatives.

72. On or about September 19, 2025, Plaintiff followed up with PHSC seeking an update on the review of her accommodation request.

73. Plaintiff alleges PHSC did not thereafter engage her in a substantive dialogue concerning her current limitations, the duration of any needed accommodation, the effectiveness of remote work, or alternative accommodations that would adequately address her infection and immunosuppression risks.

74. On or about September 23, 2025, PHSC terminated Plaintiff's employment.

75. The termination occurred approximately eight days after Plaintiff's September 15 accommodation request.

76. PHSC's written and administrative explanations for Plaintiff's separation were not consistent. Plaintiff's termination paperwork referenced nonrenewal, while PHSC later asserted that Plaintiff could not perform essential job functions, that remote work caused an undue hardship, and that performance concerns justified the separation.

77. Plaintiff alleges she was not working under the type of fixed-term employment contract that would make nonrenewal a complete or accurate explanation for the termination.

78. Plaintiff further alleges that PHSC's job description classified her position as flexible/hybrid and that PHSC had previously permitted her to perform substantial portions of the job remotely.

79. Plaintiff alleges that PHSC's failure to perform an individualized, current assessment of her limitations and potential accommodations, combined with the timing of her termination and the changing reasons for the decision, supports an inference of disability discrimination and retaliation.

80. Plaintiff also alleges PHSC's adverse treatment intensified after she complained about disability discrimination and accommodation failures, including the use of newly emphasized performance metrics, the performance-improvement process, the threat of termination or pressured resignation, and the ultimate termination.

81. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer lost wages and benefits, loss of health-insurance coverage, retirement and pension-related losses, out-of-pocket medical expenses, emotional distress, loss of earning capacity, and other compensable damages.

82. As a further direct and proximate result of Defendant's conduct, Plaintiff experienced a loss of health insurance coverage, gaps in treatment, and a worsening of her physical and mental health condition due to the distress, diminished continuity of care, and delays in treatment until alternative forms of healthcare funding could be arranged.

83. Plaintiff has also incurred attorney's fees and costs and will continue to incur fees and costs in prosecuting this action.

**COUNT I**
**ADA – FAILURE TO ACCOMMODATE**

84. Plaintiff realleges and incorporates paragraphs 1 through 83 as if fully set forth herein.

85. At all relevant times, Plaintiff was a qualified individual with a disability within the meaning of the ADA because leukemia, its treatment, and complicating conditions substantially limited one or more major life activities and bodily functions, including immune-system function, and because she had a record of such impairment.

86. At all relevant times, Plaintiff was qualified to perform the essential duties of the position with the requested reasonable accommodations.

87. All accommodations that Plaintiff requested were reasonable.

88. None of the accommodations that Plaintiff requested would have created undue hardship for Defendant.

89. PHSC failed and/or refused to provide a reasonable accommodation that would have enabled Plaintiff to perform the essential functions of her position without subjecting her to medically unsafe exposure.

90. PHSC failed to engage in a timely and meaningful interactive process directed to Plaintiff's then-current limitations and the identification of an effective accommodation, and instead materially predetermined that it would not continue remote work.

91. After periods of providing the requested accommodations, Defendant subsequently denied the accommodation without justification.

92. Defendant then later used its refusal to grant the accommodation as a basis to terminate Plaintiff.

93. Defendant knowingly and intentionally discriminated against Plaintiff in violation of the ADA by refusing to accommodate her disability.

94. Defendant is liable for the acts and omissions of its agents and employees.

95. Plaintiff suffered injuries, damages, and losses as a result of Defendant's failure to reasonable accommodate her disability.

96. Defendant acted with malice or reckless indifference to Plaintiff's protected rights under the ADA when it refused to provide a reasonable accommodation for her disability.

97. As a direct and proximate result of Defendant's failure to provide a reasonable accommodation in violation of the ADA, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits, as well as severe mental anguish and emotional distress, including but not limited to depression, loss of dignity, humiliation, embarrassment, stress, anxiety, loss of self-esteem and self-confidence, emotional pain, and other intangible injuries.

98. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer lost wages and benefits, loss of health-insurance

coverage, retirement and pension-related losses, out-of-pocket medical expenses, emotional distress, loss of earning capacity, and other compensable damages.

99. As a further direct and proximate result of Defendant's conduct, Plaintiff experienced a loss of health insurance coverage, gaps in treatment, and a worsening of her physical and mental health condition due to the distress, diminished continuity of care, and delays in treatment until alternative forms of healthcare funding could be arranged.

WHEREFORE, Plaintiff Tracy Meshey respectfully requests that the Court enter a declaratory judgment that Defendant violated the ADA by failing to provide Plaintiff with a reasonable accommodation and grant such other declaratory and/or equitable relief as the Court deems just and proper.

**COUNT II**
**ADA – DISCRIMINATION**

100. Plaintiff realleges and incorporates paragraphs 1 through 83 as if fully set forth herein.

101. At all relevant times, Plaintiff was a qualified individual with a disability within the meaning of the ADA because leukemia, its treatment, and complicating conditions substantially limited one or more major life activities and bodily functions, including immune-system function, and because she had a record of such impairment.

102. At all relevant times, Plaintiff was qualified to perform the essential duties of the position with the requested reasonable accommodations.

103. Plaintiff repeatedly notified PHSC of her disability, provided medical documentation, and requested accommodation.

104. PHSC failed and/or refused to provide a reasonable accommodation that would have enabled Plaintiff to perform the essential functions of her position without subjecting her to medically unsafe exposure.

105. Defendant knowingly and intentionally discriminated against Plaintiff in violation of the ADA by terminating her because of disability and/or because of the need for disability-related accommodation. Defendant further discriminated against Plaintiff by transferring her to a campus farther away from her treating providers and home and placing her on a performance improvement plan that was designed to result in her termination for pretextual reasons.

106. Defendant is liable for the acts and omissions of its agents and employees.

107. Plaintiff suffered injuries, damages, and losses as a result of Defendant's failure to reasonable accommodate her disability.

108. Defendant acted with malice or reckless indifference to Plaintiff's protected rights under the ADA when it refused to provide a reasonable accommodation for her disability.

109. As a direct and proximate result of Defendant's failure to provide a reasonable accommodation in violation of the ADA, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits, as well as severe mental anguish and emotional distress, including but not limited to depression, loss of dignity,

humiliation, embarrassment, stress, anxiety, loss of self-esteem and self-confidence, emotional pain, and other intangible injuries.

110. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer lost wages and benefits, loss of health-insurance coverage, retirement and pension-related losses, out-of-pocket medical expenses, emotional distress, loss of earning capacity, and other compensable damages.

111. As a further direct and proximate result of Defendant's conduct, Plaintiff experienced a loss of health insurance coverage, gaps in treatment, and a worsening of her physical and mental health condition due to the distress, diminished continuity of care, and delays in treatment until alternative forms of healthcare funding could be arranged.

WHEREFORE, Plaintiff Tracy Meshey respectfully requests that the Court enter a declaratory judgment that Defendant violated the ADA by discriminating against Plaintiff because of her disability and/or need for disability-related accommodation and grant such other declaratory and/or equitable relief as the Court deems just and proper.

**COUNT III**
**ADA – RETALIATION**

112. Plaintiff realleges and incorporates paragraphs 1 through 83 as if fully set forth herein.

113. At all relevant times, Plaintiff was a qualified individual with a disability within the meaning of the ADA because leukemia, its treatment, and complicating

conditions substantially limited one or more major life activities and bodily functions, including immune-system function, and because she had a record of such impairment.

114. At all relevant times, Plaintiff was qualified to perform the essential duties of the position with the requested reasonable accommodations.

115. Plaintiff engaged in activity protected by the ADA by requesting reasonable accommodations, opposing disability discrimination, and complaining about PHSC's alleged failure to engage in the interactive process.

116. PHSC knew of Plaintiff's protected activity.

117. After and because of Plaintiff's protected activity, PHSC subjected Plaintiff to materially adverse actions, including transferring her to a campus farther away from her treating providers and home, subjecting her to heightened scrutiny and placing her on a performance improvement plan that was designed to result in her termination for pretextual reasons, pressuring Plaintiff to resign or be fired, and ultimately terminating Plaintiff.

118. The close temporal relationship between Plaintiff's protected activity and adverse actions, including her termination approximately eight days after the September 15, 2025 accommodation request, supports a causal connection.

119. PHSC's shifting explanations for Plaintiff's separation further support an inference of retaliation and pretext.

120. Defendant is liable for the acts and omissions of its agents and employees.

121. Plaintiff suffered injuries, damages, and losses as a result of Defendant's failure to reasonable accommodate her disability.

122. Defendant acted with malice or reckless indifference to Plaintiff's protected rights under the ADA when it refused to provide a reasonable accommodation for her disability.

123. As a direct and proximate result of Defendant's failure to provide a reasonable accommodation in violation of the ADA, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits, as well as severe mental anguish and emotional distress, including but not limited to depression, loss of dignity, humiliation, embarrassment, stress, anxiety, loss of self-esteem and self-confidence, emotional pain, and other intangible injuries.

124. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer lost wages and benefits, loss of health-insurance coverage, retirement and pension-related losses, out-of-pocket medical expenses, emotional distress, loss of earning capacity, and other compensable damages.

125. As a further direct and proximate result of Defendant's conduct, Plaintiff experienced a loss of health insurance coverage, gaps in treatment, and a worsening of her physical and mental health condition due to the distress, diminished continuity of care, and delays in treatment until alternative forms of healthcare funding could be arranged.

WHEREFORE, Plaintiff Tracy Meshey respectfully requests that the Court enter a declaratory judgment that Defendant violated the ADA by retaliating against Plaintiff for requesting reasonable accommodations, opposing disability

discrimination, and complaining about Defendant's accommodation failures and grant such other declaratory and/or equitable relief as the Court deems just and proper.

**COUNT IV**
**REHAB ACT – FAILURE TO ACCOMMODATE**

126. Plaintiff realleges and incorporates paragraphs 1 through 83 as if fully set forth herein.

127. At all relevant times, Plaintiff was a qualified individual with a disability within the meaning of the Rehab Act because leukemia, its treatment, and complicating conditions substantially limited one or more major life activities and bodily functions, including immune-system function, and because she had a record of such impairment.

128. At all relevant times, Plaintiff was qualified to perform the essential duties of the position with the requested reasonable accommodations.

129. All accommodations that Plaintiff requested were reasonable.

130. None of the accommodations that Plaintiff requested would have created undue hardship for Defendant.

131. PHSC failed and/or refused to provide a reasonable accommodation that would have enabled Plaintiff to perform the essential functions of her position without subjecting her to medically unsafe exposure.

132. PHSC failed to engage in a timely and meaningful interactive process directed to Plaintiff's then-current limitations and the identification of an effective

accommodation, and instead materially predetermined that it would not continue remote work.

133. After periods of providing the requested accommodations, Defendant subsequently denied the accommodation without justification.

134. Defendant then later used its refusal to grant the accommodation as a basis to terminate Plaintiff.

135. Defendant knowingly and intentionally discriminated against Plaintiff in violation of the Rehab Act by refusing to accommodate her disability.

136. Defendant is liable for the acts and omissions of its agents and employees.

137. Plaintiff suffered injuries, damages, and losses as a result of Defendant's failure to reasonable accommodate her disability.

138. Defendant acted with malice or reckless indifference to Plaintiff's protected rights under the Rehab Act when it refused to provide a reasonable accommodation for her disability.

139. As a direct and proximate result of Defendant's failure to provide a reasonable accommodation in violation of the Rehab Act, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits, as well as severe mental anguish and emotional distress, including but not limited to depression, loss of dignity, humiliation, embarrassment, stress, anxiety, loss of self-esteem and self-confidence, emotional pain, and other intangible injuries.

140. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer lost wages and benefits, loss of health-insurance coverage, retirement and pension-related losses, out-of-pocket medical expenses, emotional distress, loss of earning capacity, and other compensable damages.

141. As a further direct and proximate result of Defendant's conduct, Plaintiff experienced a loss of health insurance coverage, gaps in treatment, and a worsening of her physical and mental health condition due to the distress, diminished continuity of care, and delays in treatment until alternative forms of healthcare funding could be arranged.

WHEREFORE, Plaintiff Tracy Meshey respectfully requests that the Court enter judgment in her favor and against Defendant The District Board of Trustees of Pasco-Hernando State College, Florida, and award:

A. Declaratory relief that Defendant violated the Rehabilitation Act by failing to provide Plaintiff with a reasonable accommodation;
B. Back pay consisting of lost wages and employment benefits;
C. Compensatory damages for emotional pain and suffering;
D. Prejudgment and post-judgment interest;
E. Reasonable attorney's fees and costs; and
F. Such other relief as the Court deems just and proper.

**COUNT V**
**REHAB ACT – DISCRIMINATION**

142. Plaintiff realleges and incorporates paragraphs 1 through 83 as if fully set forth herein.

143. At all relevant times, Plaintiff was a qualified individual with a disability within the meaning of the Rehab Act because leukemia, its treatment, and

complicating conditions substantially limited one or more major life activities and bodily functions, including immune-system function, and because she had a record of such impairment.

144. At all relevant times, Plaintiff was qualified to perform the essential duties of the position with the requested reasonable accommodations.

145. Plaintiff repeatedly notified PHSC of her disability, provided medical documentation, and requested accommodation.

146. PHSC failed and/or refused to provide a reasonable accommodation that would have enabled Plaintiff to perform the essential functions of her position without subjecting her to medically unsafe exposure.

147. Defendant knowingly and intentionally discriminated against Plaintiff in violation of the Rehab Act by terminating her because of disability and/or because of the need for disability-related accommodation. Defendant further discriminated against Plaintiff by transferring her to a campus farther away from her treating providers and home and placing her on a performance improvement plan that was designed to result in her termination for pretextual reasons.

148. Defendant is liable for the acts and omissions of its agents and employees.

149. Plaintiff suffered injuries, damages, and losses as a result of Defendant's failure to reasonable accommodate her disability.

150. Defendant acted with malice or reckless indifference to Plaintiff's protected rights under the Rehab Act when it refused to provide a reasonable accommodation for her disability.

151. As a direct and proximate result of Defendant's failure to provide a reasonable accommodation in violation of the Rehab Act, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits, as well as severe mental anguish and emotional distress, including but not limited to depression, loss of dignity, humiliation, embarrassment, stress, anxiety, loss of self-esteem and self-confidence, emotional pain, and other intangible injuries.

152. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer lost wages and benefits, loss of health-insurance coverage, retirement and pension-related losses, out-of-pocket medical expenses, emotional distress, loss of earning capacity, and other compensable damages.

153. As a further direct and proximate result of Defendant's conduct, Plaintiff experienced a loss of health insurance coverage, gaps in treatment, and a worsening of her physical and mental health condition due to the distress, diminished continuity of care, and delays in treatment until alternative forms of healthcare funding could be arranged.

WHEREFORE, Plaintiff Tracy Meshey respectfully requests that the Court enter judgment in her favor and against Defendant The District Board of Trustees of Pasco-Hernando State College, Florida, and award:

A. Declaratory relief that Defendant violated the Rehabilitation Act by discriminating against Plaintiff because of her disability and/or need for disability-related accommodation;
B. Back pay consisting of lost wages and employment benefits;
C. Compensatory damages for emotional pain and suffering;

D. Prejudgment and post-judgment interest;
E. Reasonable attorney's fees and costs; and
F. Such other relief as the Court deems just and proper.

## COUNT VI
## REHAB ACT – RETALIATION

154. Plaintiff realleges and incorporates paragraphs 1 through 83 as if fully set forth herein.

155. At all relevant times, Plaintiff was a qualified individual with a disability within the meaning of the Rehab Act because leukemia, its treatment, and complicating conditions substantially limited one or more major life activities and bodily functions, including immune-system function, and because she had a record of such impairment.

156. At all relevant times, Plaintiff was qualified to perform the essential duties of the position with the requested reasonable accommodations.

157. Plaintiff engaged in activity protected by the Rehab Act by requesting reasonable accommodations, opposing disability discrimination, and complaining about PHSC's alleged failure to engage in the interactive process.

158. PHSC knew of Plaintiff's protected activity.

159. After and because of Plaintiff's protected activity, PHSC subjected Plaintiff to materially adverse actions, including transferring her to a campus farther away from her treating providers and home, subjecting her to heightened scrutiny and placing her on a performance improvement plan that was designed to result in her

termination for pretextual reasons, pressuring Plaintiff to resign or be fired, and ultimately terminating Plaintiff.

160. The close temporal relationship between Plaintiff's protected activity and adverse actions, including her termination approximately eight days after the September 15, 2025 accommodation request, supports a causal connection.

161. PHSC's shifting explanations for Plaintiff's separation further support an inference of retaliation and pretext.

162. Defendant is liable for the acts and omissions of its agents and employees.

163. Plaintiff suffered injuries, damages, and losses as a result of Defendant's failure to reasonable accommodate her disability.

164. Defendant acted with malice or reckless indifference to Plaintiff's protected rights under the ADA when it refused to provide a reasonable accommodation for her disability.

165. As a direct and proximate result of Defendant's failure to provide a reasonable accommodation in violation of the ADA, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits, as well as severe mental anguish and emotional distress, including but not limited to depression, loss of dignity, humiliation, embarrassment, stress, anxiety, loss of self-esteem and self-confidence, emotional pain, and other intangible injuries.

166. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer lost wages and benefits, loss of health-insurance

coverage, retirement and pension-related losses, out-of-pocket medical expenses, emotional distress, loss of earning capacity, and other compensable damages.

167. As a further direct and proximate result of Defendant's conduct, Plaintiff experienced a loss of health insurance coverage, gaps in treatment, and a worsening of her physical and mental health condition due to the distress, diminished continuity of care, and delays in treatment until alternative forms of healthcare funding could be arranged.

WHEREFORE, Plaintiff Tracy Meshey respectfully requests that the Court enter judgment in her favor and against Defendant The District Board of Trustees of Pasco-Hernando State College, Florida, and award:

A. Declaratory relief that Defendant violated the Rehabilitation Act by retaliating against Plaintiff for requesting reasonable accommodations, opposing disability discrimination, and complaining about Defendant's accommodation failures;
B. Back pay consisting of lost wages and employment benefits;
C. Compensatory damages for emotional pain and suffering;
D. Prejudgment and post-judgment interest;
E. Reasonable attorney's fees and costs; and
F. Such other relief as the Court deems just and proper.

**COUNT VII**
**FCRA – FAILURE TO ACCOMMODATE**

168. Plaintiff realleges and incorporates paragraphs 1 through 83 as if fully set forth herein.

169. At all relevant times, Plaintiff was a qualified individual with a disability within the meaning of the FCRA because leukemia, its treatment, and complicating

conditions substantially limited one or more major life activities and bodily functions, including immune-system function, and because she had a record of such impairment.

170. At all relevant times, Plaintiff was qualified to perform the essential duties of the position with the requested reasonable accommodations.

171. All accommodations that Plaintiff requested were reasonable.

172. None of the accommodations that Plaintiff requested would have created undue hardship for Defendant.

173. PHSC failed and/or refused to provide a reasonable accommodation that would have enabled Plaintiff to perform the essential functions of her position without subjecting her to medically unsafe exposure.

174. PHSC failed to engage in a timely and meaningful interactive process directed to Plaintiff's then-current limitations and the identification of an effective accommodation, and instead materially predetermined that it would not continue remote work.

175. After periods of providing the requested accommodations, Defendant subsequently denied the accommodation without justification.

176. Defendant then later used its refusal to grant the accommodation as a basis to terminate Plaintiff.

177. Defendant knowingly and intentionally discriminated against Plaintiff in violation of the FCRA by refusing to accommodate her disability.

178. Defendant is liable for the acts and omissions of its agents and employees.

179. Plaintiff suffered injuries, damages, and losses as a result of Defendant's failure to reasonable accommodate her disability.

180. Defendant acted with malice or reckless indifference to Plaintiff's protected rights under the FCRA when it refused to provide a reasonable accommodation for her disability.

181. As a direct and proximate result of Defendant's failure to provide a reasonable accommodation in violation of the FCRA, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits, as well as severe mental anguish and emotional distress, including but not limited to depression, loss of dignity, humiliation, embarrassment, stress, anxiety, loss of self-esteem and self-confidence, emotional pain, and other intangible injuries.

182. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer lost wages and benefits, loss of health-insurance coverage, retirement and pension-related losses, out-of-pocket medical expenses, emotional distress, loss of earning capacity, and other compensable damages.

183. As a further direct and proximate result of Defendant's conduct, Plaintiff experienced a loss of health insurance coverage, gaps in treatment, and a worsening of her physical and mental health condition due to the distress, diminished continuity of care, and delays in treatment until alternative forms of healthcare funding could be arranged.

WHEREFORE, Plaintiff Tracy Meshey respectfully requests that the Court enter judgment in her favor and against Defendant The District Board of Trustees of Pasco-Hernando State College, Florida, and award:

A. Declaratory relief that Defendant violated the Florida Civil Rights Act by failing to provide Plaintiff with a reasonable accommodation;
B. Back pay consisting of lost wages and employment benefits;
C. Compensatory damages for emotional pain and suffering;
D. Prejudgment and post-judgment interest;
E. Reasonable attorney's fees and costs; and
F. Such other relief as the Court deems just and proper.

**COUNT VIII**
**FCRA – DISCRIMINATION**

184. Plaintiff realleges and incorporates paragraphs 1 through 83 as if fully set forth herein.

185. At all relevant times, Plaintiff was a qualified individual with a disability within the meaning of the FCRA because leukemia, its treatment, and complicating conditions substantially limited one or more major life activities and bodily functions, including immune-system function, and because she had a record of such impairment.

186. At all relevant times, Plaintiff was qualified to perform the essential duties of the position with the requested reasonable accommodations.

187. Plaintiff repeatedly notified PHSC of her disability, provided medical documentation, and requested accommodation.

188. PHSC failed and/or refused to provide a reasonable accommodation that would have enabled Plaintiff to perform the essential functions of her position without subjecting her to medically unsafe exposure.

189. Defendant knowingly and intentionally discriminated against Plaintiff in violation of the FCRA by terminating her because of disability and/or because of the need for disability-related accommodation. Defendant further discriminated against Plaintiff by transferring her to a campus farther away from her treating providers and home and placing her on a performance improvement plan that was designed to result in her termination for pretextual reasons.

190. Defendant is liable for the acts and omissions of its agents and employees.

191. Plaintiff suffered injuries, damages, and losses as a result of Defendant's failure to reasonable accommodate her disability.

192. Defendant acted with malice or reckless indifference to Plaintiff's protected rights under the FCRA when it refused to provide a reasonable accommodation for her disability.

193. As a direct and proximate result of Defendant's failure to provide a reasonable accommodation in violation of the FCRA, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits, as well as severe mental anguish and emotional distress, including but not limited to depression, loss of dignity, humiliation, embarrassment, stress, anxiety, loss of self-esteem and self-confidence, emotional pain, and other intangible injuries.

194. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer lost wages and benefits, loss of health-insurance

coverage, retirement and pension-related losses, out-of-pocket medical expenses, emotional distress, loss of earning capacity, and other compensable damages.

195. As a further direct and proximate result of Defendant's conduct, Plaintiff experienced a loss of health insurance coverage, gaps in treatment, and a worsening of her physical and mental health condition due to the distress, diminished continuity of care, and delays in treatment until alternative forms of healthcare funding could be arranged.

WHEREFORE, Plaintiff Tracy Meshey respectfully requests that the Court enter judgment in her favor and against Defendant The District Board of Trustees of Pasco-Hernando State College, Florida, and award:

A. Declaratory relief that Defendant violated the Florida Civil Rights Act by discriminating against Plaintiff because of her disability and/or need for disability-related accommodation;
B. Back pay consisting of lost wages and employment benefits;
C. Compensatory damages for emotional pain and suffering;
D. Prejudgment and post-judgment interest;
E. Reasonable attorney's fees and costs; and
F. Such other relief as the Court deems just and proper.

**COUNT IX**
**FCRA – RETALIATION**

196. Plaintiff realleges and incorporates paragraphs 1 through 83 as if fully set forth herein.

197. At all relevant times, Plaintiff was a qualified individual with a disability within the meaning of the FCRA because leukemia, its treatment, and complicating conditions substantially limited one or more major life activities and bodily functions, including immune-system function, and because she had a record of such impairment.

198. At all relevant times, Plaintiff was qualified to perform the essential duties of the position with the requested reasonable accommodations.

199. Plaintiff engaged in activity protected by the FCRA by requesting reasonable accommodations, opposing disability discrimination, and complaining about PHSC's alleged failure to engage in the interactive process.

200. PHSC knew of Plaintiff's protected activity.

201. After and because of Plaintiff's protected activity, PHSC subjected Plaintiff to materially adverse actions, including transferring her to a campus farther away from her treating providers and home, subjecting her to heightened scrutiny and placing her on a performance improvement plan that was designed to result in her termination for pretextual reasons, pressuring Plaintiff to resign or be fired, and ultimately terminating Plaintiff.

202. The close temporal relationship between Plaintiff's protected activity and adverse actions, including her termination approximately eight days after the September 15, 2025 accommodation request, supports a causal connection.

203. PHSC's shifting explanations for Plaintiff's separation further support an inference of retaliation and pretext.

204. Defendant is liable for the acts and omissions of its agents and employees.

205. Plaintiff suffered injuries, damages, and losses as a result of Defendant's failure to reasonable accommodate her disability.

206. Defendant acted with malice or reckless indifference to Plaintiff's protected rights under the FCRA when it refused to provide a reasonable accommodation for her disability.

207. As a direct and proximate result of Defendant's failure to provide a reasonable accommodation in violation of the FCRA, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits, as well as severe mental anguish and emotional distress, including but not limited to depression, loss of dignity, humiliation, embarrassment, stress, anxiety, loss of self-esteem and self-confidence, emotional pain, and other intangible injuries.

208. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer lost wages and benefits, loss of health-insurance coverage, retirement and pension-related losses, out-of-pocket medical expenses, emotional distress, loss of earning capacity, and other compensable damages.

209. As a further direct and proximate result of Defendant's conduct, Plaintiff experienced a loss of health insurance coverage, gaps in treatment, and a worsening of her physical and mental health condition due to the distress, diminished continuity of care, and delays in treatment until alternative forms of healthcare funding could be arranged.

WHEREFORE, Plaintiff Tracy Meshey respectfully requests that the Court enter judgment in her favor and against Defendant The District Board of Trustees of Pasco-Hernando State College, Florida, and award:

A. Declaratory relief that Defendant violated the Florida Civil Rights Act by retaliating against Plaintiff for requesting reasonable accommodations, opposing disability discrimination, and complaining about Defendant's accommodation failures;
B. Back pay consisting of lost wages and employment benefits;
C. Compensatory damages for emotional pain and suffering;
D. Prejudgment and post-judgment interest;
E. Reasonable attorney's fees and costs; and
F. Such other relief as the Court deems just and proper.

**COUNT X**
**FMLA – INTERFERENCE**

210. Plaintiff realleges and incorporates paragraphs 1 through 83 as if fully set forth herein.

211. Plaintiff was eligible for FMLA leave and suffered from a serious health condition.

212. PHSC was a covered employer and knew that Plaintiff required leave for treatment associated with her serious health condition.

213. Plaintiff applied for and was granted intermittent leave.

214. Plaintiff alleges PHSC interfered with, restrained, or discouraged the exercise of her FMLA rights by threatening termination during a period in which she required protected medical leave, failing to accurately and timely communicate available leave and return-to-work options, requiring Plaintiff to attend work meetings during her medical appointments, requiring that Plaintiff count time spent working against her FMLA leave bank, and treating her need for protected leave and related absences as part of the basis for adverse action.

215. Plaintiff's then-counsel was required to intervene on July 11, 2025 to secure continued protected, continuous medical leave through September 15, 2025 instead of the threatened termination.

216. Plaintiff was then effectively denied reinstatement to an equivalent position by being required to return to work in person and then terminated within days of following up on her accommodation request and return from leave, thus constituting additional acts of interference.

217. To the extent Plaintiff was denied benefits or suffered prejudice from PHSC's handling of her FMLA rights, PHSC violated 29 U.S.C. § 2615(a)(1).

218. Plaintiff seeks the remedies available under 29 U.S.C. § 2617.

WHEREFORE, Plaintiff Tracy Meshey respectfully requests that the Court enter a declaratory judgment that Defendant interfered with, restrained, or denied Plaintiff's exercise of rights protected by the FMLA and grant such other declaratory and/or equitable relief as the Court deems just and proper.

**COUNT XI**
**FMLA – RETALIATION**

219. Plaintiff realleges and incorporates paragraphs 1 through 81 as if fully set forth herein.

220. Plaintiff engaged in protected activity by requesting, taking, and asserting rights to FMLA leave.

221. PHSC knew of Plaintiff's protected FMLA activity.

222. PHSC subjected Plaintiff to materially adverse actions, including threatened termination, performance discipline, and termination.

223. The temporal relationship between Plaintiff's use and assertion of FMLA rights and PHSC's adverse actions, together with the overall sequence of events and PHSC's changing explanations, supports an inference that Plaintiff's protected leave activity was a causative factor in the adverse actions.

224. PHSC thereby violated 29 U.S.C. § 2615.

225. Plaintiff seeks the remedies available under 29 U.S.C. § 2617.

WHEREFORE, Plaintiff Tracy Meshey respectfully requests that the Court enter a declaratory judgment that Defendant retaliated against Plaintiff for requesting, taking, and asserting rights to protected leave under the FMLA and grant such other declaratory and/or equitable relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b) and the Seventh Amendment to the United States, Plaintiff demands a trial by jury as to all issues triable as of right.

Dated this 8th day of September 2026.

Respectfully submitted,

***s/ Brian Calciano***
BRIAN CALCIANO
Florida Bar No. 108879
R. MICHAEL PIERRO, JR.
Florida Bar No. 013023
*Trial Counsel for Plaintiff*

**CALCIANO PIERRO**
146 Second Street North – Suite 304
St. Petersburg, Florida 33701
(727) 217-5400
brian@flemploymentlaw.com
mike@flemploymentlaw.com